UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JACQUES MITRI, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 15-cv-14178-DJC |
| AURORA LOAN SERVICES, LLC, NATIONSTAR MOTRGAGE, LLC HOMECOMINGS FINANCIAL NETWORK, INC., and PRESIDENTIAL MORTGAGE CORP., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                  February 16, 2018

### I.    Introduction

Plaintiff Jacques Mitri ("Mitri") brings claims against Aurora Loan Services ("Aurora"), Nationstar Mortgage, LLC ("Nationstar"), Homecomings Financial Network, Inc. ("Homecomings") and Presidential Mortgage Inc. arising out of a foreclosure of the Property. D. 1-2. The Court has previously dismissed Mitri's claims against the latter three defendants. D. 109. Aurora and Nationstar also brought counterclaims against Mitri, Elie Mitri, Hala Mitri and/or Roy Mitri. D. 6. Aurora and Nationstar ("Defendants") now move for summary judgment, requesting judgment in their favor on both Mitri's claims and their counterclaims. D. 141. The Defendants also move for a judgment of use and occupancy against Mitri and Hala Mitri. D. 160. For the following reasons, the Court ALLOWS Aurora and Nationstar's motion for summary

judgment, D. 141, and ALLOWS IN PART Defendants' motion for use and occupancy. The Court DENIES the remaining motions, D. 158,[1] D. 175 as moot.

## II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is genuine if 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party.'" Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013) (citing Thompson v. Coca–Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has potential to determine the outcome of the litigation." Id. (quoting Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III. Factual Background

The following uncontested facts are taken from the parties' statements of facts. D. 143, D. 154. On or about October 6, 2005, Mitri granted a mortgage on a property located at 26 Noel Drive, Holliston, Massachusetts ("the Property") to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Homecomings. D. 143 ¶¶ 1, 15; D. 154 ¶¶ 1, 15. The mortgage

---

[1]Defendants moved to strike portions of Plaintiffs' response to their motion for summary judgment, D. 158, on the grounds that the Plaintiffs' statement of additional facts, D. 154, does not conform to the requirements of Local Rule 56.1. Even considering the Plaintiffs' statement of additional facts and the attached documents, however, there is still no genuine dispute of material fact regarding whether the Defendants are entitled to judgment and, therefore, the Court denies this motion as moot.

secured a promissory note payable to Homecomings in the amount of $603,900. D. 143 ¶ 15; D. 154 ¶ 15. MERS assigned that mortgage to Aurora by an assignment dated April 7, 2009, which was recorded on or about May 20, 2009. D. 143 ¶ 17; D. 154 ¶ 17.

In or around early 2009, Aurora told Mitri that he was behind on his payments and send Mitri information regarding loss mitigation options. D. 143 ¶ 25; D. 154 ¶ 25. In February 2010, Aurora offered Mitri a Special Forbearance Agreement ("2010 Forbearance Agreement"), under which Mitri would be obligated to provide a series of payments, a completed loan modification application, and financial documents verifying the financial information in the loan modification application. D. 143 ¶ 26; D. 154 ¶ 26.

Mitri made the required payments, but failed to provide documents verifying his income in a timely manner as required by the 2010 Forbearance Agreement. D. 143 ¶ 28; D. 154 ¶ 28. The loan modification application indicated that Mitri's monthly gross wages were $11,320. D. 143 ¶ 30; D. 154 ¶ 30. Mitri's tax return for 2008, however, indicated that his total gross wages for the year were $14,040. D. 143 ¶ 34; D. 154 ¶ 34. There were also disparities between Mitri's reported income on the loan modification application and on Mitri's tax returns for 2009 and 2010. D. 143 ¶ 35; D. 154 ¶ 35. Mitri contends that these disparities were due to the fact that Mitri shares a bank account with his brother related to a company, Holliston Gulf, Inc. ("Holliston"), which owned and operated a gas station and Mitri did not realize that he was required to report the income related to Holliston on his tax return. D. 154 ¶ 34. Mitri contends that the income related to Holliston should have been included by Aurora in its evaluation of his income. D. 154 ¶¶ 34, 36. Mitri's brother, however, was the sole owner and shareholder of the company that owned the gas station at all relevant times. D. 143 ¶¶ 41-44; D. 154 ¶¶ 41-44. On or about June 27, 2011, Aurora

informed Mitri that it was unable to offer Mitri a loan modification because the income that Mitri had provided on his loan application could not be verified. D. 143 ¶ 45; D. 154 ¶ 45.

On August 12, 2011, Aurora conducted a public auction of the Property, and it purchased the Property in the auction. D. 143 ¶ 22; D. 154 ¶ 22; D. 146-11 at 3. On or about April 19, 2012, Aurora conveyed title to the Property to Nationstar via a quitclaim deed that was recorded in the Registry of Deeds. D. 143 ¶ 23, D. 154 ¶ 23.

On or about April 26, 2013, Mitri received a check from Aurora in the amount of $6,000. D. 143 ¶ 53; D. 154 ¶ 53. This check was written pursuant to a consent agreement that Aurora had entered in with the Office of the Comptroller of the Currency ("OCC") and the Office of Thrift Supervision ("OTS") related to Aurora's foreclosure practices. D. 143 ¶¶ 51-52; D. 154 ¶¶ 51-52. The payment did not constitute an admission of wrongdoing by Aurora and did not constitute a waiver of claims against Aurora by Mitri. D. 143 ¶¶ 52-53; D. 154 ¶¶ 52-53.

On July 14, 2014, Aurora filed a summary process action against Mitri in state court to evict Mitri from the Property. D. 143 ¶ 2; D. 154 ¶ 2. That action resulted in a verdict of possession for Aurora, but the court subsequently granted Mitri relief from judgment because it ruled that Aurora did not have standing at the time to pursue the action, since Aurora had already transferred title to Nationstar. D. 143 ¶¶ 5, 12; D. 154 ¶¶ 5, 12. On or about March 27, 2017, Mitri filed amended tax returns for 2007, 2008, and 2010. D. 143 ¶ 49; D. 154 ¶ 49. During a prior proceeding, the parties had stipulated that the fair market rental of the Property was $3,500 per month from August 2011 through December 2014. D. 143 ¶ 55. An expert hired by Nationstar to assess the fair market rental rate of the Property in 2017 determined that the fair market rental rate was now $2,400 a month. D. 143 ¶ 56. Nationstar paid $89,042.45 in real estate taxes, including

assessments for water and trash usage, from August 2010 to August 2017. D. 143 ¶ 57. Of that amount, approximately $4,335.38 was related to water and trash usage. D. 146-31.

Mitri continues to reside at the Property. D. 160 at 2.

## IV. Procedural History

Mitri filed a complaint in Middlesex Superior Court on November 24, 2015. D. 1-2 at 24. On December 18, 2015, Aurora and Nationstar removed the case to federal court. D. 1. On April 14, 2017, this Court entered an order granting the Defendants' motion to dismiss with respect to certain counts asserted in the complaint. D. 109. On September 29, 2017, Nationstar and Aurora filed a motion for summary judgment on the remaining counts and their counterclaims. D. 141. On November 8, 2017, Nationstar filed a motion for use and occupancy. D. 160. On January 10, 2018, the Court heard argument on the motion for summary judgment, D. 141, the motion to strike, D. 158, and the motion for use and occupancy, D. 160, and took these matters under advisement. D. 187.

## V. Discussion

### A. Unlawful Foreclosure

Defendants contend that they are entitled to summary judgment on the unlawful foreclosure claim because Aurora was legally entitled to execute the foreclosure sale as it had a proper assignment of the mortgage from the valid record holder of the mortgage. D. 142 at 4. Mitri contends that Aurora did not prove that it possessed the promissory note, as it was required to do, prior to conducting the foreclosure. D. 153 at 13. In support of this argument, Mitri cites Eaton v. Federal Nat. Mortg. Ass'n, 462 Mass. 569 (2012). D. 153 at 15. Eaton established that a mortgagee must show that it "also hold[s] the note or act on behalf of the note holder in order to effect a valid foreclosure by sale." Eaton, 462 Mass. at 588. Eaton, however, expressly provided that its decision "apply only to mortgage foreclosure sales for which the mandatory notice of sale

has been given after the date of this opinion." Id. at 589. The foreclosure sale at issue was completed in 2011, prior to the date of the Eaton opinion. Thus, under Massachusetts law, Mitri may not challenge the validity of that foreclosure sale on the basis of the rule announced in Eaton. To the extent that Mitri argues that U.S. Bank v. Nat Ass'n v. Ibanez, 458 Mass. 637 (2011) requires a different conclusion, that argument was rejected in Eaton. Eaton, 462 Mass. at 585 n.24. Mitri makes no other argument in his brief challenging Aurora's entitlement to execute the foreclosure sale. D. 153 at 13-16. At the hearing, Mitri contended that, due to the Defendants' inequitable conduct, the Defendants should be required to meet the Eaton standard, notwithstanding the ruling in Eaton that it would not apply retroactively. Mitri provides no support, however, for the proposition that inequitable conduct can, under Massachusetts law, alter the prospective application of Eaton. Thus, there is no genuine dispute of material fact regarding the unlawful foreclosure claim and the Court ALLOWS the Defendants' motion for summary judgment as to this claim.

### B. Breach of Contract

The Defendants contend that they are entitled to summary judgment on the breach of contract claim because the undisputed record shows that, even if the 2010 Forbearance Agreement constituted a contract obliging Aurora to extend a modification to Mitri under certain conditions, those conditions were not met because Mitri was unable to provide acceptable proof of the income he provided in the loan modification application. D. 142 at 9-10. Mitri responds that he was "never advised that his modification was denied because he had engaged in tax fraud in 2010." D. 153 at 16. Even if that is true, however, there still is no genuine dispute of material fact regarding the breach of contract claim because it is undisputed that Mitri failed to meet the conditions set forth by the 2010 Forbearance Agreement for him to qualify for a loan modification. Specifically, it is undisputed that he failed to provide documents to support the financial information he had

submitted in his loan modification, as was required by the terms of the 210 Forbearance Agreement. Mitri also contends that Aurora breached the consent order that it made with the OCC and OTS related to its foreclosure practices. D. 153 at 16. Mitri, however, does not plead any facts to support his contention that Aurora breached any particular provision of that consent order or that Mitri has the standing to enforce same. To the extent Mitri now requests leave to amend his complaint to add further allegations regarding the breach of contract claim, such an amendment would be untimely given the late stage of the litigation. See Hagerty ex rel. United States v. Cyberonics, Inc., 844 F.3d 26, 34 (1st Cir. 2016) (holding that undue delay is a proper basis for denying leave to amend a complaint). For all of these reasons, there is no genuine dispute of fact regarding the breach of contract claim and the Court ALLOWS Defendants' motion as to this claim.

### C. Declaratory Judgment

Mitri also sought in his complaint a declaratory judgment that the Property remains in Mitri's possession and that the "mortgages, notes and assignments" related to the Property "be declared void or voidable or rescinded and that title returned to Mitri." D. 1-2 at 22. The parties agree that the declaratory judgment count rises or falls with the other two counts. D. 153 at 17; D. 142 at 17. For the same reasons that summary judgment is appropriate with respect to the other two counts, it is appropriate with respect to the declaratory judgment count. Thus, the Court ALLOWS Defendants' summary judgment motion as to the declaratory judgment count.

### D. Counterclaims

Nationstar also seeks summary judgment on its counterclaims for possession, use and occupancy, and unjust enrichment. D. 141 at 1. Although the counterclaims were initially brought against all four of Mitri, Hala Mitri, Elie Mitri and Roy Mitri, Nationstar has waived the counterclaims with respect to Elie Mitri and Roy Mitri.

7

*1. Possession*

Nationstar moves for summary judgment with respect to its counterclaim for possession of the Property. D. 142 at 19. The undisputed record (including an affidavit of compliance with the statutory requirements and recorded foreclosure deed) establishes that Aurora held a foreclosure auction on August 12, 2011 at which it purchased the Property, and that Aurora subsequently transferred the Property to Nationstar. D. 143 ¶¶ 22-23; D. 154 ¶¶ 22-23; D. 146-11 at 3. This is sufficient for a prima facie showing of its right to possession. Fed. Nat. Mortg. Ass'n v. Hendricks, 463 Mass. 635, 637 (2012) (explaining that "a plaintiff in a postforeclosure summary process case may make a prima facie showing of its right to possession by producing an attested copy of the recorded foreclosure deed and affidavit of sale under" the statute). For the reasons explained above, Mitri's arguments that this foreclosure sale was invalid fail. Thus, the Court ALLOWS the Nationstar's motion for summary judgment with respect to the possession counterclaim.

*2. Use and Occupancy*

Under Massachusetts law, a "tenant at sufferance is liable for the reasonable worth of its use and occupancy and/or detention of the premises." Dale v. H.B. Smith Co., 136 F.3d 843, 850 (1st Cir. 1998). "After a foreclosure, the mortgagor becomes a tenant at sufferance of the mortgagee." Santander Bank, N.A. v. O'Connor, 2015 Mass. App. Div. 185, 2015 WL 9597921, at *2 (Dist. Ct. 2015). Nationstar contends that, if it succeeds in showing that the 2011 foreclosure was lawful, then it is entitled to summary judgment on its counterclaim for use and occupancy payments from Mitri. D. 142 at 23. It further contends that, in the prior proceedings, the parties had stipulated to a use and occupancy amount of $3500 for the period from August 2011 to December 2014, and that, based on an expert opinion, the fair use and occupancy amount would be $2,400 per month for the remaining period. D. 160 at 3. Nationstar thus seeks $229,200.00 in

use and occupancy for the period from August 2011 and September 2017. D. 142 at 26. Also, in a motion filed in November 2017, Nationstar also seeks use and occupancy payments on an ongoing basis while this action remains pending. D. 160. Mitri makes two responses to Nationstar's motion. First, Mitri asserts the viability of his challenge to the 2011 foreclosure, D. 181 at 2, which the Court has rejected for the reasons described above. Second, Mitri contends that he has made certain payments, such as insurance payments, which should be deducted from the amount owed in use and occupancy. D. 181 at 3. Mitri has not provided any documents supporting his claim that he made insurance payments related to the Property. The Court ALLOWS Nationstar's motion for summary judgment with respect to its counterclaim for use and occupancy, D. 141, in the amount of $229,200. Since, with the entry of this Memorandum & Order, the Court will also be entering judgment for Defendants in this case, the Court ALLOWS in part Nationstar's motion for use and occupancy payments during the further pendency of the case, D. 160, to the extent that it seeks use and occupancy payments through today, the date of judgment, but otherwise DENIES D. 160 as moot.

### 3. *Unjust Enrichment*

Nationstar also moves for summary judgment with respect to its claim for unjust enrichment, relating to the property tax payments, water service payments, and trash collection payments that it paid and Mitri benefitted from post-foreclosure. D. 142 at 24. Nationstar seeks $89,042.45, of which $4,335.38 was related to water and trash usage. D. 142 at 25; D. 146-31. Mitri does not contest Nationstar's claim for unjust enrichment except to challenge the lawfulness of the underlying foreclosure, D. 153 at 3, which the Court has already rejected. Because Nationstar is receiving use and occupancy payments reflecting a fair market rent, however, Nationstar is not entitled to receive property tax payments – which a renter would not have paid

9

because it would be the landlord's responsibility. See, e.g., Combs v. Whittle, No. 08 MISC. 383090 KCL, 2011 WL 2112614, at *5 (Mass. Land Ct. May 27, 2011). Nationstar is, however, entitled to receive compensation for utility payments such as water and trash. Id. Thus, the Court ALLOWS Nationstar's motion for summary judgment for unjust enrichment in the amount of $4,335.58.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS the Defendants' motion for summary judgment as to Mitri's claims and Nationstar's counterclaims, D. 141. And ALLOWS IN PART Defendants' motion for use and occupancy, D. 160. The Court DENIES the remaining motions, D. 158, D. 175 as moot.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge